UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 22-CV-512 |
| | ) | |
| v. | ) | |
| | ) | |
| MELTON E. "VAL" VALENTINE, JR., | ) | |
| MELTON E. "SKIP" VALENTINE, III, | ) | |
| and INDIANTOWN FARM LLC | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff United States of America, through its undersigned attorneys, files this Complaint

and alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil action against Melton E. "Val" Valentine, Jr., Melton E. "Skip"

Valentine, III, and Indiantown Farm LLC (collectively the "Valentine Defendants") pursuant to

section 309(b) and (d) of the Clean Water Act ("CWA" or "Act"), 33 U.S.C. § 1319(b) and (d),

to obtain injunctive relief and civil penalties for violations of CWA section 301(a), 33 U.S.C.

§ 1311(a).  The Valentine Defendants discharged and, upon information and belief, are

continuing to discharge pollutants, including dredged or fill material, to waters of the United

States at their property in Jamesville, Martin County, North Carolina (the "Site") without the

authorization required by the CWA.  *See* 33 U.S.C. § 1344.

2.      In this action, the United States seeks, *inter alia*, to (1) enjoin the Valentine

Defendants' discharge of pollutants into waters of the United States without a permit in violation

1

of CWA section 301(a), 33 U.S.C. § 1311(a), at or from the Site; (2) enjoin the Valentine

Defendants to comply with the CWA's requirements; (3) require the Valentine Defendants, at

their own expense and at the direction of the United States, to restore impacted waters and

wetlands and mitigate the damages caused by their unlawful activities, including compensating

for the temporal losses of wetland functions until such time as the damage is restored; and (4)

require the Valentine Defendants to pay an appropriate civil penalty to the United States as

provided in CWA section 309(d), 33 U.S.C. § 1319(d).

## JURISDICTION AND VENUE

3.       This Court has jurisdiction over the subject matter of this action pursuant to CWA

section 309, 33 U.S.C. § 1319, and 28 U.S.C. §§ 1331, 1345, and 1355.

4.       Venue is proper in the Eastern District of North Carolina pursuant to CWA

section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. § 1391(b) and (c), because one or more of

the Valentine Defendants own property or conduct business in this District.  In addition, the Site

where the Valentine Defendants committed the CWA violations referenced in this Complaint is

located in Jamesville and the cause of action alleged herein arose in this District.

5.       Notice of the commencement of this action will be provided to the State of North

Carolina pursuant to CWA section 309(b), 33 U.S.C. § 1319(b).

## THE PARTIES

6.       Plaintiff in this action is the United States of America.  The United States has

authority to bring this action on behalf of the Department of the Army, Army Corps of

Engineers, Wilmington District (the "Corps"), pursuant to 28 U.S.C. §§ 516 and 519.

7.       Defendant Val Valentine is an individual who was last known to reside in Wake

County, North Carolina and who owns and manages various commercial and recreational real

2

estate development projects in the State of North Carolina. Defendant Skip Valentine is an individual who resides in Edgecombe County, North Carolina and whose business activities include managing hunting properties, offering hunting guide services, and participating in real estate development, including with his father Val. Defendant Indiantown Farm LLC ("Indiantown") is a North Carolina limited liability company organized by Defendant Val Valentine. Defendant Indiantown's principal office address is 1500 Sunday Drive, Suite 300, Raleigh, NC 27607, which is an accounting firm that works for Defendant Val Valentine.

8.      Defendant Val Valentine acquired the Site through Indiantown, and Indiantown has been the record owner during the timeframe in which the CWA violations alleged in this action occurred. At all relevant times, the Valentine Defendants owned, managed, and/or otherwise controlled activities at the Site. The Valentine Defendants, either alone or in combination, are responsible for the CWA violations and have played a significant role in planning, directing, controlling, assisting, or implementing some or all of the unauthorized activities at the Site that form the basis for the United States' Complaint.

## STATUTORY AND REGULATORY BACKGROUND

9.      The Clean Water Act is designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

10.      To accomplish the CWA's objectives, section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant by any person to navigable waters except as authorized by and in compliance with a permit issued pursuant to CWA section 404, 33 U.S.C. § 1344, or other CWA provisions not applicable here. Strict liability applies under the CWA.

3

11.     CWA section 404(a), 33 U.S.C. § 1344(a), authorizes the Secretary of the Army, acting through the Corps, to issue permits for the discharge of dredged or fill material into navigable waters at specified sites, after notice and opportunity for public hearing.

12.     CWA section 502(12), 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

13.     CWA section 502(6), 33 U.S.C. § 1362(6), defines "pollutant" to include, *inter alia*, dredged spoil, rock, dirt, and sand.

14.     CWA section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas."

15.     CWA regulations at 33 C.F.R. § 328.3(c)(16) and 40 C.F.R. § 120.2(3)(xvi) define "wetlands" as "those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions."

16.     CWA section 502(14), 33 U.S.C. § 1362(14), defines "point source" to include "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged."

17.     CWA section 502(5), 33 U.S.C. § 1362(5), defines "person" to include an individual, corporation, partnership, or association.

18.     As noted above, discharges of fill, such as dirt and rock, into streams and wetlands that are waters of the United States require a permit under CWA section 404, CWA, 33 U.S.C. § 1344(a).  The Site at issue here falls within the regulatory jurisdiction of the Corps' Wilmington District for purposes of CWA section 404.  The Corps has not issued a permit to the Valentine Defendants for the activities alleged in the Complaint.

4

19.     CWA section 309(b), 33 U.S.C. § 1319(b), authorizes the United States to commence a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates CWA section 301(a), 33 U.S.C. § 1311(a).

20.     CWA section 309(d), 33 U.S.C. § 1319(d), authorizes the United States to commence an action for civil penalties against any person who violates CWA section 301(a), 33 U.S.C. § 1311(a).

## FACTUAL BACKGROUND

21.     In 2016, Defendant Val Valentine filed papers with the North Carolina Office of the Secretary of State organizing Defendant Indiantown.  During 2016 and 2017, Defendant Indiantown – at Defendant Val Valentine's direction – purchased multiple, contiguous tracts of land comprising approximately 1,437 acres, on the north side of US Highway 64 and Main Street, in Jamesville, Martin County, North Carolina.  In 2021, the Defendants purchased a large 287-acre section on the western edge of the property.  The Valentine Defendants now own or have access to as many as 1,700 acres in the area.

22.     The Site is located within a broad continuum of floodplain wetlands that abut the Roanoke River, Devils Gut, and Gardner Creek.  Many of the bottomlands in the area near the Site are protected as part of the Roanoke River National Wildlife Refuge in recognition of the importance of this extensive, wooded wetlands system as a natural resource that sustains migratory birds, fish, and a variety of other wildlife.

23.     The Roanoke River has its headwaters in the Blue Ridge Mountains and runs for approximately 410 miles through southern Virginia and northeastern North Carolina, draining a large area of coastal plain from the eastern edge of the Appalachian Mountains southeast across the Piedmont to Albemarle Sound.  The Roanoke River is a traditionally navigable water in

North Carolina, as it is currently used, was used in the past, and is susceptible to use in interstate or foreign commerce, and is designated as such under section 10 of the Rivers and Harbors Act, 33 U.S.C. § 403.

24.     In addition to its importance to the Mid-Atlantic region and scenic beauty, the Roanoke River is a treasured resource for boaters and anglers across North Carolina.  The North Carolina Wildlife Resources Commission maintains a fishing pier and public boat launch on the Roanoke River at the Astoria Landing Boating Access Area in Jamesville, which is near the eastern boundary of the Site.

25.     Devils Gut runs along the northern boundary of the Site and is itself a traditionally navigable water, as well as a tributary to the Roanoke River.  Devils Gut supports various commercial and recreation activities, including fishing, kayaking, and canoeing, and it is part of the popular Roanoke River Paddle Trail, which offers overnight camping platforms to the public. A broad swath of wetlands abuts Devils Gut and the Roanoke River floodplain.

26.     Devils Gut and Gardner Creek converge near the Site's northwestern boundary. Gardner Creek has a north-south orientation and runs roughly parallel to the western Site boundary and continues south past US Highway 64.  Like Devils Gut, Gardner Creek is a traditionally navigable water and a tributary to the Roanoke River.  A broad area of wetlands also abuts Gardner Creek near the Site.

27.     The bottomland hardwood forest that exists in the Roanoke River floodplain is one of the largest contiguous, relatively undisturbed examples of this forest type in the mid-Atlantic region.  These bottomland hardwood forests are the most valuable forest type in the lower basin in terms of biological and ecological diversity, game value, timber value, and water quality enhancement.  The Roanoke River's bottomland hardwood floodplains and wetlands,

including those present at the Site, provide major benefits such as: nutrient retention, groundwater recharge, flood storage, wildlife habitat, and support areas of high biodiversity. Among other things, the wetlands at the Site regularly receive and absorb floodwaters from the Roanoke River Basin and provide valuable wildlife habitat.

28.     Wildlife resources in the lower Roanoke River Basin include North Carolina's largest population of wild turkey, critical habitat for the black bear, and over 200 species of birds including species such as wood ducks, bald eagles, barred owls, great blue herons, and cerulean warblers.  There are approximately 33 breeding neo-tropical migratory bird species and approximately 88 additional species of breeding birds identified in the Roanoke River Basin, including approximately seven major heron nesting and breeding areas.  Concentrations of these wintering waterfowl, nesting ducks, raptors, osprey, and neo-tropical migrants represent the highest diversity of breeding birds in the North Carolina coastal plain.  The lower Roanoke River also provides an immense habitat for fish species such as striped bass, alewife, blueback herring, hickory shad, largemouth bass, white perch, bluegill, pumpkinseed, redear sunfish, yellow perch, and catfish as well as other nongame species.

29.     After acquiring ownership of the Site in 2017, the Valentine Defendants began to develop a hunting club, which they named the Devils Gut Rod & Gun Club, on the property. Public records indicate that another corporate entity formed by Defendant Val Valentine – Valentine Amusement Park Inc. – owns the 14.35 acres on which the Club's hunting lodge itself sits.  Defendant Skip Valentine has served as the primary management contact for the Devils Gut Rod & Gun Club.  To support their recreational activities and generate additional income, the Valentine Defendants have stated they plan to harvest and sell timber from the Site.  Timber was

7

previously cut on the Site between 2008 and 2010 by the previous owner.  Since the Valentines purchased the property, they have conducted some tree thinning, harvesting, and reseeding.

30.     At the direction of one or more of the Valentine Defendants, contractors were hired to construct the lodge building and a new network of roads and dikes through large areas of wetlands at the Site.  At one or more of the Valentine Defendants' direction, earthmoving equipment, such as bulldozers, front loaders, and trucks, was used to clear, excavate, grade, and deposit dirt and other earthen material directly into wetlands at the Site.

31.     Much of the dirt and earthen fill material came from borrow pits at the Site.  One or more of the Valentine Defendants selected or approved the borrow pit locations on land that they owned and/or controlled.  Portions of some of the borrow pits themselves were located in wetlands, as most of the subject area is no more than a few feet above sea level.  According to their own forest management map, the Valentine Defendants envisioned that their roads and dikes would result in a series of open-water impoundments at the Site.  Those impoundments, which were constructed in wetlands at the Site, have been used for duck hunting or other recreational purposes associated with the Devils Gut Rod & Gun Club.  The Valentine Defendants also established food plots in several hummocks scattered across the property, which have a slightly higher elevation than the bottomlands, in order to attract wildlife and enhance the hunting and recreational amenities at the Site.

32.     Some sections of the new roads at the Site not only filled wetlands without authorization but were built without sufficient culverts so that the roads serve as dikes that impound and restrict the natural flow of waters through the wetlands system.  Some of the culverts in the roads were equipped with risers, water control structures that allow the Valentine Defendants to manipulate or block the flow and circulation patterns of waters within the

8

floodplain. Thus, the roads/dikes created and continue to maintain large areas of standing open water where forested wetlands existed before the Valentine Defendants conducted their unauthorized action. These new impoundments of standing open water may enhance duck hunting but are not needed for forestry and are detrimental to the forested wetlands at the Site.

33.     The network of roads/dikes that the Valentine Defendants constructed are used to support their operation of the Devils Gut Rod & Gun Club; for example, they lead from the lodge to the duck impoundments, hunting stands and blinds, boat ramps, and the wildlife food plots. Given that the fill was placed within the Roanoke River floodplain, the roads/dikes on the northern portion of the site, in particular, have been subject to severe overwash and blowouts from flood flows, which contributes to the sedimentation of the surrounding wetlands. Due to the geography of this low-lying riverine area, the roads/dikes will remain vulnerable to blowouts and thus similar damage to the wetlands is likely to continue at the Site.

34.     Prior to commencing the earthmoving and fill work at the Site, the Valentine Defendants did not seek or obtain any CWA permit from the Corps under section 404. When the Corps learned about the unauthorized activities at the Site, the Corps requested that the Valentine Defendants cease construction within wetlands until an inspection could be performed. The Corps also advised the Valentine Defendants to perform a proper delineation of the wetlands at the Site. Notwithstanding the Corps' concerns, the Valentine Defendants proceeded to construct another road system to "Hardison's Ridge," an area in the northwest portion of the Site near Devils Gut, and continued other wetland filling activities in violation of the CWA.

35.     On June 27, 2018, the Corps issued a cease-and-desist letter to Defendants Val Valentine and Indiantown, concluding that they had violated CWA section 301(a), 33 U.S.C. § 1311(a), by constructing roads and filling waters of the United States without a permit. The

9

Corps estimated that the unauthorized fill had destroyed at least 4 acres of wetlands and impounded another 350 acres of wetlands at the Site. At that time, the Corps requested that Defendants Val Valentine and Indiantown submit a restoration plan and/or an application for an after-the-fact permit to the extent that the damage could not be completely repaired.

36.     Despite the Corps' requests, the Valentine Defendants did not undertake restoration. In late October 2018, representatives from the Corps and North Carolina's Division of Water Resources visited the Site with the Defendants' consultants. Floodwaters were washing over many of the alleged roadways at that time. Additional roads/dikes constructed within wetlands were discovered during that visit as well as riser gates installed on several culverts to impound water. The fill's embankments remain vulnerable to flooding and erosion, with sediment washing into the surrounding wetlands. The Valentine Defendants' failure to implement best management practices ("BMPs") exacerbates the adverse impacts caused by the unauthorized roads and dikes in wetlands at the Site.

## FIRST CLAIM FOR RELIEF

### Unauthorized Discharges of Dredged and/or Fill Material

37.     The United States re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 36.

38.     Following their acquisition of the parcels, the Valentine Defendants and/or persons acting on their behalf, discharged and, upon information and belief, are continuing to discharge dredged or fill material into the waters of the United States without a permit under CWA section 404. The unauthorized discharges subject to this Complaint were made into and remain in waters of the United States, including adjacent wetlands at the Site.

39.     The wetlands at the Site abut and are adjacent to the Roanoke River, Devils Gut, and Gardner Creek, which are traditionally navigable waters and waters of the United States within the meaning of the CWA, as provided in 33 U.S.C. § 1362(7).

40.     The adverse environmental impacts of the Valentine Defendants' conduct extend beyond the direct harms to affected wetlands.  A relatively permanent connection and significant nexus exists between the affected wetlands and the Roanoke River, its tributaries, and associated wetlands.  The subject waters, either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of downstream waters, including the Roanoke River and ultimately Albemarle Sound.

41.     The Valentine Defendants' activities at the Site resulted in the unauthorized discharge of dredged or fill material into waters of the United States.  The dredged or fill material that the Valentine Defendants and/or persons acting on their behalf caused to be discharged includes, among other things, dirt, spoil, rock, sand, and earthen material, all of which constitute "pollutants" as defined in CWA section 502(6), 33 U.S.C. § 1362(6).

42.     The Valentine Defendants and/or persons acting on their behalf used mechanized land-clearing and earthmoving equipment, including a bulldozer, trucks, and track hoes, to accomplish the discharges.  These items of equipment constitute "point sources" as defined in CWA section 502(14), 33 U.S.C. § 1362(14).

43.     The Valentine Defendants did not obtain a permit from the Corps for the discharges of dredged or fill material into waters of the United States at the Site.

44.     The Valentine Defendants owned and/or have managed the property on which the unauthorized discharges of dredged or fill material occurred and are occurring.

11

45.     The Valentine Defendants, alone or in combination, planned, conducted, directed, contracted for, supervised and/or otherwise benefitted from the unauthorized activities at issue on their property.

46.     The Valentine Defendants are each persons within the meaning of CWA section 502(5), 33 U.S.C. § 1362(5).

47.     The Valentine Defendants have violated and continue to violate CWA section 301(a), 33 U.S.C. § 1311(a), by their unauthorized discharges of dredged or fill material into waters of the United States, including wetlands adjacent to the Roanoke River, Devils Gut, and Gardner Creek at the Site.

48.     Each day that such unauthorized material remains in place constitutes a separate and continuing violation of CWA section 301(a), 33 U.S.C. § 1311(a).

49.     Despite the Corps' requests to address the violations observed at the Site, the Valentine Defendants have not removed the fill or complied with the CWA to date.  Because the Valentine Defendants have not undertaken appropriate remedial actions, the violations remain in place at the Site.  Unless enjoined, the Valentine Defendants are likely to continue to discharge dredged or fill material into, or allow dredged or fill material to remain in, waters of the United States at the Site, in violation of CWA section 301(a), 33 U.S.C. § 1311(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court order the following relief:

1.      That the Valentine Defendants be permanently enjoined from discharging or causing the discharge of dredged or fill material, sediment, and any other pollutant into any waters of the United States except in compliance with the CWA;

12

2.      That the Valentine Defendants be enjoined to undertake compensatory measures, at their expense and at the direction of the United States, to provide complete restoration of the Site and provide mitigation for any loss of function or other environmental damage;

3.      That the Valentine Defendants be enjoined to comply with the CWA's requirements and the Act's implementing regulations in the future;

4.      That the Valentine Defendants be assessed, pursuant to CWA section 309(d), 33 U.S.C. § 1319(d), an appropriate civil penalty in an amount to be determined for violating CWA section 301(a), 33 U.S.C. § 1311(a);

5.      That the United States be awarded costs, attorney's fees, and disbursements in this action; and

6.      That this Court grant Plaintiff, the United States of America, such other relief as the Court may deem just and proper.

Dated: December 13, 2022                          Respectfully submitted,

TODD KIM                                          MICHAEL F. EASLEY, JR.
Assistant Attorney General                        United States Attorney
                                                  Eastern District of North Carolina


/s/ Michael C. Augustini                          ANDREW KASPER
MICHAEL C. AUGUSTINI                              NC Bar No. 44515
DC Bar Number 452526                              Assistant United States Attorney
ALEX J. HARDEE                                    Eastern District of North Carolina
NC Bar No. 56321                                  150 Fayetteville Street
United States Department of Justice               Suite 2100
Environment & Natural Resources Division Raleigh, North Carolina 27601
Environmental Defense Section                     Phone: (919) 856-4530
P.O. Box 7611                                     Fax: (919) 856-4487
Washington D.C. 20044-7611                        andrew.kasper@usdoj.gov
Tel: (202) 616-6519 (Augustini)
Tel: (202) 514-2398 (Hardee)
Fax: (202) 514-8865
michael.augustini@usdoj.gov
alex.hardee@usdoj.gov

13

*Counsel for Plaintiff United States of America*

OF COUNSEL:

Carl E. Pruitt, Jr., Esq.
Deputy District Counsel
U.S. Army Corps of Engineers, Wilmington District
69 Darlington Avenue
Wilmington, North Carolina 28403-1343